**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**April 14, 2015**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA

    Plaintiff - Appellee,

v.

DANA J. HUFF,

    Defendant - Appellant.

No. 13-3216

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 2:11-CR-20111-KHV-01)**

---

Submitted on the briefs[*]:

James L. Spies of the law office of James L. Spies, P.A., Kansas City, Kansas for Defendant–Appellant.

Barry R. Grissom, United States Attorney, and Terra D. Morehead, Assistant United States Attorney, District of Kansas, Kansas City, Kansas, for Plaintiff–Appellee.

---

Before **McHUGH**, **McKAY**, and **BALDOCK**, Circuit Judges.

---

**McKAY**, Circuit Judge.

---

    This case primarily concerns the limits to a district court's discretion when ruling

---

[*]This case was ordered to be submitted on the briefs on November 18, 2014.

on government motions for reconsideration. The district court initially ruled to suppress evidence of firearms seized during the arrest of Appellant Dana J. Huff, but the court agreed to reconsider the motion after the government presented a new legal basis for the seizure. Upon reconsideration of the motion to suppress, the court found the seizure to be proper. Mr. Huff argues that the court improperly reconsidered the motion to suppress because the government provided no justification for its initial oversight and the law enforcement officers lacked probable cause to arrest him.

We hold that the district court may reconsider a motion to suppress without requiring the government to justify why it initially failed to set forth that legal basis for the seizure of evidence. We also hold that the officers had sufficient probable cause to arrest Mr. Huff after seeing the firearms, one of which was being transported in violation of a local ordinance. We therefore affirm the ruling of the district court.

## BACKGROUND

In June 2011, two police officers on a routine patrol in Kansas City, Kansas observed an Isuzu Rodeo stop for a red light at an intersection. The vehicle initially stopped left of the center stripe and in one of the oncoming lanes of traffic before backing up and moving rightward to a correct lane. The officers initiated a traffic stop because of the violation.

The two officers approached on either side of the vehicle. The passenger-side officer, using a flashlight, spotted a handgun underneath the back of the driver's seat as he approached. The officer notified his partner that the individuals in the car—Mr. Huff in the driver's seat and another man in the passenger seat—were armed and dangerous.

–2–

The officers instructed the men in the vehicle to place their hands on the dash.

The passenger-side officer noticed Mr. Huff move his hands back and forth near the gear shift in a manner suggesting Mr. Huff might try to drive away. The officer opened the passenger door, leaned into the car, and removed the keys from the ignition. While doing this, the officer noticed a second firearm—a rifle—wedged between the man in the passenger seat and the vehicle's center console. The officers directed Mr. Huff and his passenger to exit the vehicle, handcuffed them, and put them in the back of their patrol car.

Mr. Huff was subsequently indicted on one count of being a felon in possession of a firearm, based on both the handgun and the rifle. He was also indicted on one count of possession of an unregistered, short-barreled rifle.

At trial, Mr. Huff, acting pro se, sought to suppress evidence of the two firearms the officers found in his vehicle. Mr. Huff argued the officers lacked reasonable suspicion of criminal activity when searching his vehicle, and that they unlawfully arrested him without a warrant and without probable cause to believe he had committed a crime.

After a suppression hearing, the court held the initial stop to be lawful based on Mr. Huff's traffic infraction. The court also held that the officer who leaned into the vehicle to remove the keys from the ignition acted lawfully. However, the court granted the motion to suppress evidence of both firearms because, at the time of the arrest the officers had found no evidence of any legal violation. Specifically, the court found the officers had not questioned the two individuals about the firearms before they were

arrested, and the government produced no evidence that the officers knew then of Mr. Huff's past felony conviction or the rifle's unregistered status. The government cited no evidence of probable cause to initiate an arrest, and, so far as the court could determine, the arrest took place merely for officer safety concerns and to secure the scene.

Two days after the district court issued its decision, the government filed a motion to reconsider the suppression of evidence of the two firearms. The government said it had failed to specifically identify the ordinance Mr. Huff violated during argument on the motion to suppress. The government's motion for reconsideration stated that the pistol— spotted in plain view in the vehicle by one of the officers—demonstrated that Mr. Huff had violated Kansas City, Kansas Municipal Ordinance § 22-177(a)(5), which provides that "[t]ransporting any pistol, revolver, or other firearm which is not unloaded and encased in a container which completely enclosed the firearm" constitutes unlawful use of a weapon.

The court granted the government's motion for reconsideration and, in light of the newly presented ordinance, found that the officers had probable cause for the arrest. A jury ultimately found Mr. Huff guilty of being a felon in possession of a firearm, based on the rifle but not the pistol, and not guilty of being a felon in possession of an unregistered short-barreled rifle. Mr. Huff then brought this appeal challenging the district court's decisions to grant the government's motion for reconsideration and to deny his motion to suppress evidence of the firearms.

## DISCUSSION

We first consider whether the district court properly granted the government's motion to reconsider its decision to suppress evidence of the two firearms. We review a district court's decision whether to reconsider a prior ruling for abuse of discretion. *United States v. Randall*, 666 F.3d 1238, 1241 (10th Cir. 2011).

We have held that a motion to reconsider may be granted when the court has misapprehended the facts, a party's position, or the law. *Servants of The Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Specific situations where circumstances may warrant reconsideration include "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Id.* "A motion to reconsider is not a second chance for the losing party to make its strongest case or to dress up arguments that previously failed." *Voelkel v. Gen. Motors Corp.*, 846 F. Supp. 1482, 1483 (D. Kan. 1994). We have specifically held that "[a] motion to reconsider should not be used to revisit issues already addressed or advance arguments that could have been raised earlier." *United States v. Christy*, 739 F.3d 534, 539 (10th Cir. 2014).

Appellant stated correctly that the government had ample opportunity to bring the ordinance requiring transported pistols be unloaded and completely encased to the attention of the district court in its initial opposition to the motion to suppress evidence of firearms in Mr. Huff's vehicle. The government provided no valid excuse for failing to do so.

Nevertheless, the district court granted the government's motion for

reconsideration because in this case the government's mistake related to an omission of a legal argument, not the failure to present evidence on a particular issue. The court therefore concluded there was no police misconduct to deter through suppression of evidence which was legally obtained.

Other circuits differ on how district courts should handle motions by the government to reconsider suppression orders. When the government seeks reconsideration of a suppression order based on a new legal argument or evidence, the Eleventh and D.C. Circuits require the government to justify its failure to present this legal argument or evidence in the earlier proceedings. *See United States v. Villabona-Garnica*, 63 F.3d 1051, 1055 (11th Cir. 1995) ("By failing to raise an issue at a suppression hearing without offering any justification therefor, the government waives its right to assert it in subsequent proceedings." (internal quotation marks and brackets omitted) (quoting, in parenthetical, *United States v. Thompson*, 710 F.2d 1500, 1504 (11th Cir. 1983))); *McRae v. United States*, 420 F.2d 1283, 1288 (D.C. Cir. 1969) (holding that the government was "obligated to advance stronger justification for relitigating" a suppression issue where the issue raised was clear and a considered ruling had been made).

On the other hand, the Second, Fifth, Seventh, and Ninth Circuits hold that on a motion to reopen a suppression hearing, no bright-line rule exists requiring such justification. *See, e.g.*, *United States v. Ozuna*, 561 F.3d 728, 734-35 (7th Cir. 2009); *In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 177, 196-97 (2d Cir. 2008); *United States v. Rabb*, 752 F.2d 1320, 1323 (9th Cir. 1984) (abrogated on other grounds,

as recognized by *United States v. Franco-Beltran*, 229 Fed. Appx. 592 n.1 (9th Cir. 2007); *United States v. Scott*, 524 F.2d 465, 467 (5th Cir. 1975).  Under the law in these circuits,

> A defendant is entitled to have evidence suppressed only if it was obtained unconstitutionally.  If matters appearing later indicated that no constitutional violation occurred, society's interest in admitting all relevant evidence militates strongly in favor of permitting reconsideration. . . . [A] criminal defendant acquires no personal right of redress in suppressed evidence because the rationale for suppressing unlawfully obtained evidence is to deter official misconduct, not to compensate criminal defendants for the violation.

*In re Terrorist Bombings*, 552 F.3d at 197 (internal quotation marks and citations omitted).

The Supreme Court has consistently stated that the exclusionary rule exists primarily to deter official misconduct.  *See, e.g.*, *United States v. Leon,* 468 U.S. 897, 898 (1984); *United States v. Calandra,* 414 U.S. 338, 347 (1974).  In *Herring v. United States,* 555 U.S. 135, 144 (2009), the Supreme Court further stated that "[t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system."

Under this reasoning, when suppressed evidence later turns out to have been constitutionally obtained, application of the exclusionary rule provides no meaningful deterrence.  Here, police officers lawfully seized evidence, but the government's attorneys failed to inform the district court of the legal justification for that seizure before the district court granted Mr. Huff's motion to suppress.  To categorically prohibit the

district court from reconsidering that suppression of evidence under those circumstances serves merely to punish the government for its attorneys' oversight. However, the exclusionary rule was not crafted to deter judicial or prosecutorial error or oversight, but to deter illegal police searches and seizures.

Application of the exclusionary rule in cases like this provides no meaningful deterrence to police officers who committed no misconduct, while it exacts a high toll on the justice system by potentially allowing guilty defendants to go free. We therefore agree with the majority of our sister circuits who have considered this question and concluded that the district court in such a case should be permitted—as one of the many considerations when ruling on a motion for reconsideration—to determine whether its earlier suppression of evidence should stand in light of the newly raised legal basis for the initial seizure. The district court may prefer, even require, the government to explain why it failed to introduce an argument earlier, but that decision should rest with the district court. We therefore hold that the district court did not err in exercising its discretion in this case to grant the motion for reconsideration.

Based on its reconsideration of this matter—reconsideration we deem proper—the district court denied the motion to suppress evidence of the firearms seized from Mr. Huff's vehicle. We now turn to Appellant's arguments that the court erred in denying his motion to suppress this evidence and that the officers arrested him without probable cause. We review the district court's denial of a motion to suppress under the totality of the circumstances, viewing the evidence in the light most favorable to the government. *United States v. Kimoana*, 383 F.3d 1215, 1220 (10th Cir. 2004). We accept the district

–8–

court's factual findings unless clearly erroneous but review the ultimate question of reasonableness under the Fourth Amendment de novo. *Id.*

Appellant argues that the officer who reached into the vehicle and removed the keys from the ignition illegally searched his vehicle because the officer failed first to ask Mr. Huff to remove the keys himself. Appellant also argues that the ultimate reason given for his arrest—after the district court granted the government's motion for reconsideration—was merely pretext. Specifically, he states that although the arresting officer who testified at the hearing on the motion for reconsideration said he was aware of Kansas City Municipal Ordinance § 22-177(a)(5), he never testified that he based his decisions to reach into the car or to arrest Mr. Huff on that ordinance. Therefore, Mr. Huff argues, it seems unlikely the officer truly based either action on Mr. Huff's violation of the ordinance, and the search and subsequent arrest were without probable cause.

The Supreme Court has foreclosed these arguments, since it has held that an officer's subjective reason for making an arrest may be different from the criminal offense which the known facts provide probable cause for, and that "an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). "[T]he Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, *whatever* the subjective intent," *Whren v. United States*, 517 U.S. 806, 814 (1996), because "evenhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that depend upon the subjective state of mind of the officer." *Horton v. California*, 496 U.S. 128, 138 (1990).

–9–

For probable cause to exist, an officer need only have the specific factual knowledge that justifies a search or arrest, regardless of the officer's actual motivation. *See Whren*, 517 U.S at 812-13. Police officers may search vehicles without a warrant if they have probable cause to believe the vehicle contains evidence of a crime. *United States v. Nicholson*, 17 F.3d 1294, 1297 (10th Cir. 1994). In this case, the officers were aware of a gun in the car which, regardless of whether they realized it, was being transported in violation of Kansas City Municipal Ordinance § 22-177(a)(5). Upon seeing the uncased weapon, the officers had the requisite probable cause both to conduct a search of the vehicle and to initiate an arrest based upon this weapons violation. Whether or not the officers actually had the ordinance in mind when conducting the search or making the arrest makes no difference in this analysis.

We therefore hold the initial search and the subsequent arrest to be lawful and **AFFIRM** the ruling of the district court.