IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 123,613

STATE OF KANSAS,
*Appellee*,

v.

BRIAN BAILEY,
*Appellant*.

SYLLABUS BY THE COURT

1.

An appellate court has discretion to consider application of the doctrine of res judicata for the first time on appeal if it involves only a question of law arising on proved or admitted facts and is finally determinative of the case.

2.

Here, under the issue preclusion doctrines, the criminal defendant may not relitigate prior judicial determinations that the State does not possess biological material related to the investigation or prosecution that led to the defendant's convictions. The defendant is therefore not entitled to postconviction forensic DNA testing under K.S.A. 2020 Supp. 21-2512.

Appeal from Wyandotte District Court; JENNIFER L. MYERS, judge. Opinion filed June 10, 2022. Affirmed.

*Joseph A. Desch*, of Law Office of Joseph A. Desch, of Topeka, was on the briefs for appellant.

*Daniel G. Obermeier*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

1

The opinion of the court was delivered by

LUCKERT, C.J.: Brian C. Bailey appeals the district court's summary denial of his petition for forensic deoxyribonucleic acid (DNA) testing of biological material from a rape kit. Bailey brings this appeal under K.S.A. 2020 Supp. 21-2512 more than three decades after a jury convicted him of aggravated criminal sodomy in 1988. Before this current proceeding, Bailey twice sought forensic DNA testing, and both times the district court denied his motion. He did not appeal one of those orders but appealed the second and lost on appeal. Given these prior proceedings and court orders, the State argues application of res judicata principles prevents Bailey from relitigating the issues he raises on appeal. We agree and affirm the district court.

FACTUAL AND PROCEDURAL BACKGROUND

In 1988 CR 586, the State charged Bailey with two counts of aggravated criminal sodomy for his role in an incident in the Wyandotte County jail. The State alleged that Bailey and others attacked and sodomized another inmate.

At trial, the main evidence against Bailey was testimony from the victim and others who identified Bailey as one of the perpetrators. A crime investigator also testified. He told the jury that the victim was taken to a hospital where a forensic examination rape kit was completed. The State presented no other evidence about the kit or any examination of it. A Wyandotte County jury convicted Bailey.

Since then, Bailey has filed several postconviction motions or petitions, including at least three related to his attempt to obtain postconviction forensic DNA testing. In each of the three proceedings related to DNA testing, he has cited K.S.A. 21-2512, as authority

2

for the district court to order the testing. K.S.A. 2020 Supp. 21-2512(a) sets out circumstances under which the statute allows postconviction DNA testing.

He filed the first motion in 2005. He labeled the motion as one to correct illegal sentence, and he filed it in his underlying criminal case, 1988 CR 586. The district court judge denied the motion. The judge explained: "A search by the sheriff's office reveals no evidence in its custody from this case. As a result, no testing is possible pursuant to K.S.A. 21-2512." Bailey filed a notice of appeal but did not follow through and pursue the appeal.

About five years later, Bailey filed the second motion related to DNA testing. He again filed the motion in 1988 CR 586, and this time labeled it as "Motion for Availability of Other Relief Pursuant to K.S.A. 60-2606." In it, he requested an evidentiary hearing to explore whether the DNA evidence could be located or, alternatively, to determine what happened to the DNA evidence collected in 1988. If the evidence could not be located, he asked the judge to vacate his conviction.

The State responded by saying it had "reviewed the State's file in this matter and noted that the rape kit that had been taken from the victim during the investigation had been sent to the Kansas Bureau of Investigation [KBI] for testing in 1988." The State provided KBI lab reports, which document that the KBI testing found no seminal fluid or any foreign hairs. The State explained that the KBI also reported it no longer had possession of the evidence and only had a blood sample from the victim and that the Wyandotte County Sheriff's Department once again checked its evidence room and determined it had no evidence associated with the case. The written response added that "the State does not know what the disposition of the rape kit was other than it is not in the two department's [*sic*] possession."

The district court appointed counsel for Bailey and held a hearing. Following the hearing, the district court judge denied the motion. In doing so, the judge found that a rape kit had existed at one time, but neither the prosecutor's office nor any law enforcement agency currently had the kit. The judge also found no evidence showed the State had lost or destroyed evidence in bad faith. Finally, citing the KBI laboratory report, the judge found the samples collected and examined by the KBI included nothing that could be tested for DNA.

Bailey appealed, and the Court of Appeals affirmed the denial of Bailey's second motion. *State v. Bailey*, No. 106,655, 2013 WL 195185 (Kan. App. 2013) (unpublished opinion). In concluding its discussion, the Court of Appeals summarized three reasons Bailey's motion failed. First, "[a]ny testing with today's technology would still be futile because there is no evidence in the rape kit from which a genetic profile on anyone else could be obtained." Second, the court held this meant no test could either implicate or exonerate Bailey. Third, the court cited *Arizona v. Youngblood*, 488 U.S. 51, 57-58, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988), for its holding that the failure of police to preserve potentially useful evidence is not a denial of due process of law unless the defendant can show bad faith by police. The court then held that law enforcement could not have acted in bad faith in destroying or failing to preserve the rape kit, because the KBI had determined there was no biological material to test for DNA. 2013 WL 195185, *2. The Court of Appeals issued a mandate after Bailey's time to request this court's review of the decision had passed.

About seven years later, Bailey filed a "Petition for DNA testing Pursuant to K.S.A. § 21-2512 (2020)" that has led to the current appeal. He filed it under a new case number in district court but noted it related to 1988 CR 586. At the district court, the State argued Bailey could not establish the required conditions for postconviction DNA testing under K.S.A. 2020 Supp. 21-2512(a). In doing so, it repeatedly pointed out that

4

the parties had litigated in other proceedings whether Bailey's situation met the statutory criteria and each time the district court had determined Bailey was not entitled to testing under the statute.

The district court denied the motion, and Bailey appealed directly to this court under K.S.A. 2020 Supp. 22-3601(b)(3) (Supreme Court has jurisdiction if maximum sentence is life).

ANALYSIS

Bailey raises several arguments, but our threshold consideration arises from the State's contention that res judicata principles preclude this appeal. Res judicata is one of three doctrines—the other two being law of the case and collateral estoppel—that put into practice the policy that courts generally will not reopen matters already decided by a court. *State v. Collier*, 263 Kan. 629, 631, 952 P.2d 1326 (1998). While differences exist between the three doctrines, each of them has the same effect of allowing one opportunity for argument and decision while avoiding relitigation of the same issue by the same parties. 263 Kan. at 631. Collectively, these doctrines are often called "'preclusionary doctrines.'" 263 Kan. at 634.

The State's res judicata argument relates to the effect of the prior rulings by the district court and the Court of Appeals about Bailey's prior requests for postconviction DNA testing. Again, Bailey made those requests through his two motions filed in the criminal case. Now, Bailey brings his third request for testing, this time in a separate case that began with his petition under K.S.A. 2020 Supp. 21-2512. While filed in different cases and under different procedural statutes, in each Bailey has invoked K.S.A. 2020 Supp. 21-2512 as the basis for his right to obtain postconviction DNA testing. Despite the different procedural forms, the State argues under the doctrine of res judicata Bailey

5

cannot relitigate the prior determinations that he cannot meet the threshold requirements of K.S.A. 2020 Supp. 21-2512(a).

K.S.A. 2020 Supp. 21-2512(a) allows certain criminally convicted individuals to petition for postconviction forensic DNA testing

"of any biological material that:

"(1) Is related to the investigation or prosecution that resulted in the conviction;

"(2) is in the actual or constructive possession of the state; and

"(3) was not previously subjected to DNA testing, or can be subjected to retesting with new DNA techniques that provide a reasonable likelihood of more accurate and probative results." K.S.A. 2020 Supp. 21-2512(a).

In the earliest proceeding in which Bailey invoked K.S.A. 2020 Supp. 21-2512, the district court held there is no biological material in the possession of the State, and thus K.S.A. 2020 Supp. 21-2512 does not apply. See K.S.A. 2020 Supp. 21-2512(a)(2). Bailey did not appeal that ruling. And in the second proceeding, the district court made the same finding, and the Court of Appeals affirmed that holding. *Bailey*, 2013 WL 195185, at *2. Given that history, the State argues Bailey cannot relitigate these issues here.

In response, Bailey argues the State cannot raise res judicata for the first time on appeal. He also argues the current "DNA motion is not the same claim brought in the prior actions, as those were specifically made for different relief." He notes the first motion was one to correct an illegal sentence and the second sought relief from his conviction. Finally, he argues no court has resolved the factual underpinnings of the

6

issues. We reject Bailey's arguments and conclude res judicata principles preclude this appeal.

We first examine whether the failure to raise the issue at the district court precludes our consideration, and we hold it does not. Granted, the general rule is that appellate courts consider only those matters the parties raised in the district court. See *State v. Puckett*, 230 Kan. 596, 598, 640 P.2d 1198 (1982). Here, while in district court, the State repeatedly argued Bailey had raised the issues in earlier litigation and had lost. But it did not take that next step and ask the district court to hold the current proceedings were barred under res judicata principles.

Even if we assume the State needed to be more explicit to preserve the issue, we may still consider the argument on appeal. That is because preservation is a prudential rule, rather than a jurisdictional bar, which means an appellate court has discretion to apply exceptions. The State relies on an exception that allows us to consider issues raised for the first time on appeal if the issue "'involves only a question of law arising on proved or admitted facts and which is finally determinative of the case.'" *State v. Parry*, 305 Kan. 1189, 1193, 390 P.3d 879 (2017) (quoting *Pierce v. Board of County Commissioners*, 200 Kan. 74, 80-81, 434 P.2d 858 [1967]).

In *Parry*, we held the Court of Appeals had not erred in sua sponte raising a different preclusion doctrine—specifically, the law-of-the-case doctrine applied in that appeal. We also held that the Court of Appeals did not err in applying the doctrine to hold the State could not relitigate in a second prosecution a suppression issue it had lost in the initial prosecution of the same defendant. 305 Kan. at 1198. We noted that preclusion issues present questions of law. 305 Kan. at 1193-94 (citing *State v. Robertson*, 298 Kan. 342, 344, 312 P.3d 361 [2013] [res judicata]; *In re Care & Treatment of Sporn*, 289 Kan. 681, 686, 215 P.3d 615 [2009] [res judicata and collateral estoppel]; *Collier*, 263 Kan. at

7

634 [law-of-the-case doctrine]). And, focusing on the specifics of the appeal, we noted "there are no asserted factual or procedural matters in controversy, and the doctrine, if it applies, is dispositive of the appeal." 305 Kan. at 1194. We thus held the Court of Appeals had discretion to apply the question-of-law-preservation exception and consider the preclusion doctrine for the first time on appeal and that the Court of Appeals did not abuse its discretion in electing to do so.

We must ask if the same question-of-law-preservation exception can apply here to the State's assertion of the preclusion doctrine of res judicata. Within the criminal context "[i]n Kansas, there are four requirements to apply res judicata: (1) identity in the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4) identity in the quality of persons for or against whom claim is made." *Robertson*, 298 Kan. at 344 (citing *Sporn*, 289 Kan. at 686). We have also phrased these requirements as being, "'(1) same claim; (2) same parties; (3) claims were or could have been raised; and (4) a final judgment on the merits.' [Citations omitted.]" 298 Kan. at 344.

Neither the State nor Bailey raise a controversy about factual or procedural matters that relate to our analysis of how those four requirements apply. Rather, the controversy is about the legal effect of the previous procedures, which court records document and are thus uncontroverted. Also, the prior rulings holding the State has no biological material related to Bailey's convictions in its actual or constructive possession is determinative of his ability to obtain postconviction forensic testing. See K.S.A. 2020 Supp. 21-2512(a).

Under those circumstances, as we did in *Parry*, 305 Kan. at 1193-94, we have discretion to consider for the first time on appeal whether the doctrine of res judicata precludes Bailey from relitigating issues or claims decided when he brought his previous motions. We exercise that discretion and apply the res judicata doctrine because doing so

8

fulfills the policy reasons that support the res judicata doctrine, which are "'to avoid indefinite relitigation of the same issue, to obtain consistent results in the same litigation, to afford one opportunity for argument and decision of the matter at issue, and to assure the obedience of lower courts to the decisions of appellate courts.' *Collier*, 263 Kan. at 631." *Parry*, 305 Kan. at 1194-95.

Those policy reasons intertwine with our analysis of Bailey's second argument, in which he contends res judicata does not strictly apply because he made different claims each time. He first asked to correct his allegedly illegal sentence. He next sought relief under K.S.A. 60-2606 in the form of an "'[o]rder' vacating and setting aside the judgment in the above-captioned case and discharg[ing] the Defendant from the wrongful custody of the Kansas Department of Corrections." But he premised both requests for relief on his argument that he was entitled to testing under K.S.A. 2020 Supp. 21-2512. He argued the lack of testing and the destruction or loss of evidence caused a violation of his due process rights.

Bailey suggests the different procedural mechanisms he used means there is not an identity of the cause of action or the same claim involved. Res judicata thus does not apply, he argues. But this argument ignores our caselaw in which we have focused on the substance of the arguments, rather than the procedural technicalities and have often used the term "res judicata" as an umbrella term for all preclusion theories—res judicata, collateral estoppel, and law of the case. See *In re Tax Appeal of Fleet*, 293 Kan. 768, 777, 272 P.3d 583 (2012) ("The district court's references to res judicata are broad enough to encompass both claim and issue preclusion. The modern trend is to more precisely refer to claim preclusion as res judicata and issue preclusion as collateral estoppel. [Citation omitted.] But since it is not entirely clear whether the district court was relying upon claim or issue preclusion, we will consider both doctrines under the general umbrella of res judicata."); see also *In re Care & Treatment of Sigler*, 310 Kan. 688, 697-98, 448 P.3d

9

368 (2019) (recognizing res judicata and collateral estoppel as distinct, but closely related, doctrines intended to prevent relitigation of prior adjudications).

In *State v. Conley*, 287 Kan. 696, 698, 197 P.3d 837 (2008), and *State v. Johnson*, 269 Kan. 594, 602, 7 P.3d 294 (2000), for example, this court applied res judicata when a defendant moved to correct an illegal sentence based on the same issue he had argued in his direct appeal. And in *Drach v. Bruce*, 281 Kan. 1058, Syl. ¶ 14, 136 P.3d 390 (2006), we held the res judicata doctrine applied in a K.S.A. 60-1507 action to issues previously resolved in the criminal case.

As to motions for forensic DNA testing, the Court of Appeals has applied res judicata to bar a postconviction proceeding seeking DNA testing after the defendant had requested the same testing during the criminal proceeding, the district court had denied the motion, and the defendant had not pursued the DNA issue on direct appeal. *State v. Barnett*, No. 121,233, 2021 WL 300700 (Kan. App. 2021) (unpublished opinion), *rev. denied* 314 Kan. 855 (2021).

These holdings do not rigorously align with the modern trend of more precisely referring to claim preclusion as res judicata and issue preclusion as collateral estoppel. But they apply the general rule that "[a] judgment rendered by a court having jurisdiction of the parties and subject matter is conclusive and indisputable evidence as to all rights, questions, or facts put in issue in the suit and actually adjudicated therein, when the same come again into controversy even though the subsequent proceedings are on a different cause of action or claim." 50 C.J.S. Judgments § 1040.

This broad examination of the issue litigated by the parties also adheres to our caution that "'courts must consider the substance of both the first and subsequent action and not merely their procedural form'" when applying a preclusion doctrine. *Bogguess v.*

10

*State*, 306 Kan. 574, 580, 395 P.3d 447 (2017). In *Bogguess*, we advised that "'a court must conduct a case-by-case analysis that moves beyond a rigid and technical application to consider the fundamental purposes of the rule in light of the real substance of the case at hand.' [Citation omitted.]" 306 Kan. at 580. That brings us full circle to the fundamental purposes of preclusive doctrines, which are to "'avoid indefinite relitigation of the same issue, to obtain consistent results in the same litigation, to afford one opportunity for argument and decision of the matter at issue, and to assure the obedience of lower courts to the decisions of appellate courts.' *Collier*, 263 Kan. at 631." *Parry*, 305 Kan. at 1194-95.

Here, applying issue preclusion doctrines meet these fundamental purposes. The foundation of Bailey's two earlier motions and this one is K.S.A. 2020 Supp. 21-2512. And the district court has twice made the finding that no biological material remains in the possession of the State. Bailey thus cannot meet the threshold requirement of K.S.A. 2020 Supp. 21-2512(a)(2). This also means he cannot jump the hurdle of (a)(2) to get to (a)(3), which conveys that a serial motion can be filed when biological material in the possession of the State "can be subjected to retesting with new DNA techniques that provide a reasonable likelihood of more accurate and probative results."

Instead, Bailey tries to relitigate an issue already repeatedly resolved by a court. He does so by collaterally attacking the district court's finding that the State has no biological material, raising procedural objections, and making other arguments. But Bailey had a chance to present those arguments in the earlier proceedings and in appeals from those rulings. He did not pursue those arguments. He abandoned the first appeal, and the second ended with the Court of Appeals affirming the district court. Bailey does not dispute the prior rulings, nor does he argue that the State currently has possession of the evidence. Because he raised the issue and lost one appeal and allowed another order to become final without an appeal, res judicata (used as an umbrella term) prevents

11

Bailey from relitigating whether the State has possession of biological material. See *Bogguess*, 306 Kan. at 579 (res judicata applies "to all issues actually raised, and those issues that could have been presented, but were not presented"); *Conley*, 287 Kan. at 698 (motions to correct illegal sentence are subject to res judicata and thus "may not be used to breathe new life into an appellate issue previously adversely determined"); *Johnson*, 269 Kan. at 602 (motions to correct illegal sentence "may not be used as a vehicle to breathe new life into appellate issues previously abandoned or adversely determined").

Although the district court judge did not base the dismissal of Bailey's petition on issue preclusion grounds, the order may be affirmed on different grounds. See *State v. Williams,* 311 Kan. 88, 91, 456 P.3d 540 (2020). We apply issue preclusion doctrines and hold that Bailey may not relitigate prior judicial determinations that the State does not possess biological material related to the investigation or prosecution that led to Bailey's convictions. We thus affirm the district court's ruling on this alternative basis.

Judgment of the district court is affirmed.