NOT DESIGNATED FOR PUBLICATION

No. 124,257

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JEFFREY DOUGLAS MASTERSON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; DAVID B. DEBENHAM, judge. Opinion filed August 26, 2022. Affirmed.

*Kai Tate Mann*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., ISHERWOOD and COBLE, JJ.

PER CURIAM: Jeffrey Douglas Masterson challenges his term of registration under the Kansas Offender Registration Act (KORA). He argues that KORA is facially unconstitutional because it violates the compelled speech doctrine, contrary to the First Amendment to the United States Constitution. Because the registration requirement does not violate the First Amendment, we affirm.

1

FACTS

Masterson pleaded guilty to three counts of sexual exploitation of a child, in violation of K.S.A. 2016 Supp. 21-5510(a)(2). The trial court sentenced Masterson to 105 months in prison. The trial court ordered Masterson to register under KORA for 25 years because of his convictions.

Masterson appealed his prison sentence. This court vacated his sentences and remanded to the trial court for resentencing. *State v. Masterson*, No. 121,153, 2020 WL 4722997 (Kan. App. 2020) (unpublished opinion).

At resentencing, Masterson objected to the KORA registration requirement. The trial court imposed a new sentence, again stating the KORA registration requirement.

Masterson timely appeals.

ANALYSIS

*Does KORA violate the compelled speech doctrine under the First Amendment?*

Masterson argues that KORA is facially unconstitutional, impermissibly infringing on his rights guaranteed under the First Amendment. The State first argues that this court should not reach the merits of Masterson's claim because he did not raise it in his prior appeal when he challenged his prison sentence and this court remanded for resentencing. Second, the State argues that Masterson's claim fails on the merits because he is not compelled to speak. The State of Kansas, not Masterson, publishes the offender registry and the State argues that this does not constitute compelled speech. Because KORA does not violate the First Amendment, we affirm the registration requirement.

2

Where an appeal is taken from a conviction or sentence imposed, the judgment of the appellate court is res judicata as to all issues actually raised. Issues that could have been raised are also deemed waived. *State v. Salary*, 309 Kan. 479, 481-82, 437 P.3d 953 (2019) (citing *State v. Kingsley*, 299 Kan. 896, 901, 326 P.3d 1083 [2014]).

In Masterson's reply brief, he argues that the State is wrong to call the argument res judicata. Issues, however, which could have been raised, but were not, are waived. See *State v. Bailey*, 315 Kan. 794, 802-03, 510 P.3d 1160 (2022). Masterson's previous appeal raised only the issue of his prison sentence. Thus, the State's argument that he waived the issue of his KORA registration has some legal support. Nevertheless, the State's res judicata argument is composed of only two sentences: "Here, if Masterson had wished to challenge his offender registration, he should have done so in his initial appeal. His failure to do so means the issue is barred by res judicata."

However, as Masterson has pointed out in his reply brief, res judicata principles are to be given a flexible and common-sense construction because they are rooted in "the requirements of justice and sound public policy." *Herington v. City of Wichita*, 314 Kan. 447, 458, 500 P.3d 1168 (2021). Thus, before res judicata can be invoked, there must be a "'case-by-case analysis that moves beyond a rigid and technical application to consider the fundamental purposes of the rule in light of the real substance in the case at hand.'" 314 Kan. at 459. Here, the State's res judicata argument is so brief and incomplete that it crosses the line into conclusory.

As an example, in its brief, the State has failed to back up its res judicata argument by showing that it meets the fundamental purposes to justify applying issue preclusion in this case. See *Bailey*, 315 Kan. at 802-03. Also, the State's argument is conclusory because it is inadequately grounded. Its argument is *not* self-evidently true. Thus, the State has failed to demonstrate why we should accept its argument as true. For this reason, we reject this argument.

Masterson contends that we should apply an exception and consider his claim because: (1) it involves only a question of law on proved or admitted facts and is determinative of the case and (2) consideration of the claim is necessary to prevent the denial of fundamental rights. *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015). Masterson acknowledges that the decision to review claims under this exception is prudential. *State v. Gray*, 311 Kan. 164, 170, 459 P.3d 165 (2020). But he succinctly asserts, in his brief, that failing to reach the issue would be imprudent because KORA effectively denies Kansans the full extent of their rights. Masterson offers no explanation for why he failed to raise this issue in his first appeal. Because Masterson raises this issue for the first time on appeal, we need not address this issue. *Gray*, 311 Kan. at 170.

Nevertheless, if we were to address this issue, it is legally and fatally flawed. Masterson notes that KORA requirements compel him to provide comprehensive personal information including details of previous offenses, a current photograph, and work and home addresses. He argues that this is compelled speech because, when the government publishes this information, he maintains that he has been forced to take part in government speech: "And the message of this speech is clear: 'this person is dangerous; you should be cautious around him; and here is where you can find him.'" But federal courts have already held that the government's action does not violate the compelled speech doctrine. *Davis v. Thompson*, No. 19-3051-SAC, 2019 WL 6327420, at *3 (D. Kan. 2019) (unpublished opinion) (citing *United States v. Arnold*, 740 F.3d 1032, 1034 [5th Cir. 2014] and *United States v. Fox*, 286 F. Supp. 3d 1219, 1221-24 [D. Kan. 2018]).

The First Amendment generally prohibits the government from requiring private citizens to speak its messages. See *Agency for Int'l Development v. Alliance for Open Society Int'l, Inc.*, 570 U.S. 205, 213, 133 S. Ct. 2321, 186 L. Ed. 2d 398 (2013). In *Board of Education v. Barnette*, 319 U.S. 624, 642, 63 S. Ct. 1178, 87 L. Ed. 1628 (1943), the United States Supreme Court held that it is unconstitutional to compel public

school children to pledge allegiance to the United States flag. In *Wooley v. Maynard*, 430 U.S. 705, 717, 97 S. Ct. 1428, 51 L. Ed. 2d 752 (1977), the United States Supreme Court held that it is unconstitutional for New Hampshire to compel drivers to display the state motto "Live Free or Die" on their license plates. The compelled speech doctrine relies on the general proposition that the government may not compel a citizen to speak its message.

The State argues that the Kansas Sex Offender Registry website is government speech. The State contends that the government is speaking for itself, rather than compelling Masterson to speak. The State contends that the government broadcasts its own message, meaning that KORA does not violate Masterson's First Amendment rights under the compelled speech doctrine. For this proposition, the State cites *Riley v. National Federation of Blind*, 487 U.S. 781, 108 S. Ct. 2667, 101 L. Ed. 2d 669 (1988).

The *Riley* Court held that some of North Carolina's fundraising disclosure requirements violated the First Amendment because they compelled speech. But *Riley* only applied to financial disclosures from the fundraiser litigants to the public, not financial reporting requirements to the government. That is, the government could not compel the fundraisers to give information to the public, but the public could get the same information by different means. "For example, as a general rule, the State may itself publish the detailed financial disclosure forms it requires professional fundraisers to file. This procedure would communicate the desired information to the public without burdening a speaker with unwanted speech during the course of a solicitation." 487 U.S. at 800.

The *Riley* Court still allowed the government to collect information directly from the fundraiser. The State argues that Masterson reporting his information to the government is like the detailed financial disclosure forms that fundraisers had to file with North Carolina. The State argues that the government may not compel Masterson to

5

speak to the public himself. But the government may collect information from Masterson and the government may include that information when it speaks.

Thus, the State disagrees that the compelled speech doctrine even applies. The State draws the distinction that the government does not compel Masterson to speak its message when it publishes the offender registry, but rather the government is speaking about Masterson as its topic. The State argues that the government is allowed to speak its own messages. *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 207, 135 S. Ct. 2239, 192 L. Ed. 2d 274 (2015) ("When government speaks, it is not barred by the Free Speech Clause from determining the content of what it says."). Masterson disagrees, saying that the speech is his own and the offender registry is "truly only a megaphone broadcasting the compelled speech." But we need not decide this point because federal courts have provided highly persuasive guidance along different lines. Assuming without deciding that the government is compelling Masterson to speak, the requirement is narrowly tailored to a compelling government interest.

Offender registries require a narrow category of information for the compelling government interest of protecting the public from harm. *Fox*, 286 F. Supp. 3d at 1223-24. For example, Robert Wesley Fox moved to dismiss a charge of failing to register as required under the Sex Offender Registration and Notification Act (SORNA), the federal equivalent to KORA. Fox challenged the indictment as unconstitutional, presenting the same compelled speech argument that Masterson presents here. The United States District Court for the District of Kansas held that strict scrutiny applied to his claim. A statute satisfies strict scrutiny if the government can show that it narrowly tailored the statute to serve compelling governmental interests. See *Reed v. Town of Gilbert*, 576 U.S. 155, 171, 135 S. Ct. 2218, 192 L. Ed. 2d 236 (2015). The *Fox* court held that the government had a compelling interest in protecting the public from sex offenders and offenders against children, recognizing that convicted sex offenders are much more likely than any other type of offender to be rearrested for a new sexual offense. *Fox*, 286 F.

Supp. 3d at 1223 (citing *McKune v. Lile*, 536 U.S. 24, 33, 122 S. Ct. 2017, 153 L. Ed. 2d 47 [2002]). The *Fox* court also held that SORNA is narrowly tailored because it requires reporting of a limited amount of information which is directly related to the goals of the statute. *Fox*, 286 F. Supp. 3d at 1224. In short, the registry requirement does not mean that the government has unlawfully compelled the offender's speech. See *Arnold*, 740 F.3d at 1035.

Like the federal sex offender registry (SORNA), the Kansas offender registry has also passed a strict scrutiny test in federal court. As an example, Robert Davis challenged the constitutionality of KORA in the United States District Court for the District of Kansas. *Davis*, 2019 WL 6327420, at *1. The *Davis* court reviewed KORA under the same strict scrutiny test. 2019 WL 6327420, at *3. Also, the court held that KORA serves the same compelling government interest as SORNA and is also narrowly tailored to that purpose. 2019 WL 6327420, at *3. So we adopt the rule in *Davis* that KORA does not violate the First Amendment to the United States Constitution.

For the preceding reasons, we affirm.

Affirmed.