NOT DESIGNATED FOR PUBLICATION

No. 127,218

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MARLON SHEPPARD,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; MICHAEL GROSKO, judge. Submitted without oral argument. Opinion filed March 6, 2026. Affirmed.

*Grace E. Tran*, of Kansas Appellate Defender Office, for appellant.

*Kayla L. Roehler*, deputy district attorney, *Mark A. Dupree, Sr.*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before GARDNER, P.J., HILL, J., and JOAN M. LOWDON, District Judge, assigned.

PER CURIAM: This is a postconviction habeas corpus appeal arising from Marlon Sheppard's 2006 jury conviction for second-degree murder and two counts of criminal possession of a firearm. After affirmance on direct appeal, Sheppard filed a K.S.A. 60-1507 motion alleging ineffective assistance of trial counsel and appellate counsel, which the district court denied following an evidentiary hearing. We affirm the decision of the district court.

1

*Procedural Background*

A Wyandotte County jury convicted Marlon Sheppard of second-degree murder and two counts of criminal possession of a firearm in connection with the October 19, 2005 shooting death of Christopher Brewer. The facts underlying his conviction are summarized in *State v. Sheppard*, No. 98,337, 2009 WL 743094, at *1-2 (Kan. App. 2009) (unpublished opinion). For the current appeal, the pertinent procedural facts are as follows.

*Prior Appeal and Motion for New Trial*

Sheppard filed a motion for a new trial in the district court following his convictions. At an evidentiary hearing in December 2006, trial counsel testified regarding his strategic decisions. Sheppard testified concerning potential alibi witnesses Jamie Johnson, Deborah Gaskin, and Sammy Samuels, as well as cell phone records. Sheppard claimed the witnesses would have corroborated his version of events and cell phone records would include calls that might place him elsewhere. The district court denied the motion, concluding that trial counsel's strategic decisions were reasonable and within the bounds of effective representation.

After the denial of his motion for new trial, Sheppard appealed the conviction in his criminal case. He raised ineffective assistance of counsel (IAC) claims on direct appeal, challenging his trial counsel's advice against testifying, trial counsel's failure to call Johnson as an alibi witness, and trial counsel's failure to impeach the State's key witness on prior inconsistent statements regarding Sheppard's clothing. The Court of Appeals affirmed the conviction, rejecting these IAC claims. *Sheppard*, 2009 WL 743094, at *5-7.

*The K.S.A. 60-1507 Motion and Evidentiary Hearing*

As the postconviction process unfolded, in January 2011, Sheppard filed a motion under K.S.A. 60-1507 in the Wyandotte County District Court, alleging constitutionally deficient representation by both trial and appellate counsel. As the claims evolved, Sheppard asserted: (1) Trial counsel failed to investigate and present two additional alibi witnesses, Gaskin and Samuels; (2) trial counsel failed to investigate the key State witness, Christopher Schley's criminal history; (3) trial counsel did not obtain his cell phone records; and (4) his appellant counsel was ineffective for failing to raise certain trial counsel deficiencies on direct appeal and for failing to seek a *Van Cleave* remand hearing. See *State v. Van Cleave*, 239 Kan. 117, 120, 716 P.2d 580 (1986).

The district court held an evidentiary hearing in June 2013.

*Sheppard's Testimony*

Turning to the evidentiary hearing, Sheppard testified that trial counsel met with him two to three times before trial for about ten minutes at each meeting. In that circumscribed time, Sheppard claimed that trial counsel never discussed the discovery materials or Sheppard's potential alibi witnesses in meaningful detail.

Sheppard identified three potential alibi witnesses by name, address, and phone number: Johnson, his girlfriend; Gaskin, Johnson's mother; and Samuels, a neighbor in the same apartment complex. He testified that he had provided their contact information to trial counsel. Sheppard asserted that Samuels could testify that he was going into his apartment at the same time that Sheppard was arriving home—before the homicide occurred.

When Sheppard's counsel at the 1507 hearing attempted to develop testimony regarding these alibi witnesses, the district court observed that these issues had been raised on direct appeal and had been already adjudicated. Sheppard's counsel abandoned that line of questioning and did not develop the alibi-witness claims.

Sheppard also testified that he had explicitly requested that trial counsel obtain his cell phone records to corroborate his account and rebut Schley's testimony. But trial counsel did not pursue this avenue. The State contested that this was the first time Sheppard had raised the phone records claim during the postconviction proceedings.

*Trial Counsel's Testimony*

In response, trial counsel testified that he had received discovery from the State and had met with Sheppard before trial. He explained that his overall trial strategy centered on attacking the case as circumstantial and undermining the credibility of the State's main witness. He focused on impeaching Schley through Schley's immunity grant and inconsistent statements—a strategy trial counsel believed would more effectively undermine Schley's credibility.

As to cell phone records, trial counsel testified that he did not believe they were necessary given his overall trial strategy and his assessment that Schley's credibility was already substantially compromised by the immunity grant and other factors. And as to Schley's criminal history, trial counsel was shown a National Crime Information Center printout bearing entries for larceny and armed robbery. He testified that he did not believe impeaching Schley based on crimes of dishonesty "would make much difference" given his focus on attacking Schley's credibility through other means.

4

*The District Court's Ruling*

The district court ruled from the bench following the June 17, 2013 evidentiary hearing. The district court determined that res judicata barred several of Sheppard's claims, concluding that his allegations concerning alibi witnesses and phone records had been raised in his motion for a new trial and adjudicated on direct appeal. The court explained that defendants get "one bite of the apple when you raise an issue, and you can't continually raise the same issue over and over and over again."

While the district court did not articulate *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), it did appear to apply *Strickland*'s two-pronged analysis to the trial counsel's IAC claims. The court determined that trial counsel's performance was not deficient. The district court found that trial counsel had articulated and implemented a coherent trial strategy focused on attacking the State's circumstantial case and undermining Schley's credibility through his immunity agreement and inconsistent statements.

The court also rejected as "not credible" Sheppard's testimony about minimal preparation time, noting trial counsel's extensive trial experience, including approximately sixty jury trials, ten of which were homicide cases. Under what appeared to be *Strickland*'s prejudice prong, the court found no reasonable probability that the outcome would have been different given the totality of evidence presented to the jury.

Concerning appellate counsel, the district court specifically found that Sheppard had presented no evidence about appellate counsel's performance or alleged deficiencies. The court denied the motion.

5

*Subsequent Postconviction Proceedings*

In 2017, Sheppard pursued further postconviction relief, filing pro se motions to dismiss and to correct an illegal sentence. Both motions were denied, and the Court of Appeals affirmed those denials. *State v. Sheppard*, 56 Kan. App. 2d 1193, 1194, 444 P.3d 1006 (2019). The appellate court noted during those proceedings that although Sheppard had filed his 2011 K.S.A. 60-1507 motion that is the subject of this appeal, "It [was] unclear from the record whether Sheppard appealed the court's decision" on that earlier postconviction matter. 56 Kan. App. 2d at 1197.

*Appeal of K.S.A. 60-1507 Ruling*

Sheppard now appeals the denial of his K.S.A. 60-1507 motion. The appeal follows an unusual procedural course. A district court judge ruled from the bench, denying Sheppard's motion in June 2013, but never entered a written order memorializing that denial. The appeal remained undocketed for over a decade. In February 2024—more than ten years after the evidentiary hearing—a different district court judge filed a written order denying the K.S.A. 60-1507 motion based on his review of an "unofficial transcript" from the 2013 bench ruling. The appellate court granted Sheppard's motion to docket out of time in February 2024.

ANALYSIS

The overarching question turns on whether the district court's denial of the K.S.A. 60-1507 motion withstands scrutiny across res judicata and abandonment of claims.

6

(1)     *The district court did not err in denying Sheppard's K.S.A. 60-1507 motion on grounds of res judicata and abandonment of claims.*

*Standard of Review*

A district court confronting a K.S.A. 60-1507 motion has three procedural options: (1) The court may summarily deny the motion if the pleadings, files, and case records conclusively demonstrate the movant is entitled to no relief; (2) the court may determine that a potentially substantial issue exists warranting a preliminary hearing, after which it may deny the motion if no substantial issue emerges; or (3) the court may conclude that the motion, files, records, or preliminary hearing presents a substantial issue requiring a full evidentiary hearing. *State v. Adams*, 311 Kan. 569, 577-78, 465 P.3d 176 (2020). The standard of review depends on which of these options a district court used. 311 Kan. at 578.

Here, the district court conducted a full evidentiary hearing. When the district court makes findings of fact and conclusions of law after an evidentiary hearing on a K.S.A. 60-1507 motion, an appellate court reviews whether the district court's factual findings are supported by substantial competent evidence and reviews the district court's legal conclusions de novo. *Denney v. Norwood*, 315 Kan. 163, 175, 505 P.3d 730 (2022). After full evidentiary hearings, district courts must issue findings of fact and conclusions of law on all issues presented. Supreme Court Rule 183(j) (2025 Kan. S. Ct. R. at 238). Whether the district court's findings of fact and conclusions of law comply with Supreme Court Rule 183(j) is a question of law that is reviewed de novo. *Khalil-Alsalaami v. State*, 313 Kan. 472, 486, 486 P.3d 1216 (2021).

Res judicata presents a pure question of law reviewed de novo. *State v. Salary*, 309 Kan. 479, 481, 437 P.3d 953 (2019).

7

Sheppard contends that exceptional circumstances excuse procedural bars of res judicata because his appellate counsel was ineffective by failing to raise IAC claims on direct appeal against trial counsel and in not seeking a *Van Cleave* remand.

Yet as the State notes, Sheppard's claims regarding alibi witnesses and phone records are barred by res judicata because they were raised and decided in the 2006 motion for a new trial and on direct appeal. The State argues that these claims received full evidentiary development and appellate consideration, and that these same claims were abandoned at the 1507 hearing when counsel declined to pursue them after the district court noted they had been decided on direct appeal. The State further asserts that appellate counsel cannot be deficient for failing to seek a *Van Cleave* hearing when an evidentiary hearing on the claims of IAC had already been held.

Kansas courts invoke res judicata to bar a successive suit where the following requirements are met: (1) same claim; (2) same parties; (3) claims were or could have been raised; and (4) a final judgment on the merits. *State v. Bailey*, 315 Kan. 794, 799-800, 510 P.3d 1160 (2022); see *Herington v. City of Wichita*, 314 Kan. 447, 458, 500 P.3d 1168 (2021) (stating that res judicata prevents splitting a single cause of action or claim into two or more suits). Stated another way, res judicata prevents relitigation when the following four conditions coincide: "'(1) identity in the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4) identity in the quality of persons for or against whom claim is made.'" *Bailey*, 315 Kan. at 799. A change in any one of these conditions may render res judicata inapplicable. *In re Care & Treatment of Sigler*, 310 Kan. 688, 699, 448 P.3d 368 (2019).

Where an appellate court reviews a conviction or sentence imposed, its judgment is res judicata as to all issues actually raised. Issues that could have been raised are deemed waived. *Salary*, 309 Kan. at 482 (citing *State v. Kingsley*, 299 Kan. 896, 901, 326 P.3d 1083 [2014]); see also *State v. Martin*, 294 Kan. 638, 640-41, 279 P.3d 704 (2012)

8

(issues raised and decided in prior K.S.A. 60-1507 motions or motions to correct an illegal sentence are res judicata and cannot be raised in subsequent motions). Still, res judicata does not bar a prisoner from raising an IAC claim based on a new factual basis that was not reviewed on direct appeal. *Bogguess v. State*, 306 Kan. 574, 582-83, 395 P.3d 447 (2017).

*Res Judicata Bars Sheppard's Successive Challenge*

Sheppard's motion advances no new factual basis. In 2006, Sheppard moved for a new trial and testified about his desire to present additional alibi witnesses and phone records. The record establishes that Sheppard had informed trial counsel of potential witnesses in 2006—including the very individuals now identified by name. Trial counsel testified that Sheppard had mentioned "another person . . . watching a football game" without providing a name, and Sheppard himself testified to informing trial counsel of three potential alibi witnesses, including one named Samuels, whom he knew how to contact.

As to phone records, trial counsel testified at the evidentiary hearing that he had reviewed the phone records provided by the State but chose not to obtain additional records due to strategic concerns about the reciprocal discovery agreement and the risk that such records might corroborate the eyewitness' testimony. Trial counsel explained that he was concerned these phone calls would substantiate rather than undermine the State's case, given that there was no dispute that Sheppard had called the eyewitness to arrange transportation. Trial counsel explained the strategic choices underpinning those decisions, and the court denied relief. After the evidentiary hearing, the district court denied Sheppard's motion for a new trial.

On direct appeal, the appellate court considered and rejected Sheppard's IAC arguments after reviewing the complete record from the evidentiary hearing. *Sheppard*,

2009 WL 743094, at *5-7. The appellate court noted that "'[d]ecisions on whether to call a certain witness are strategic and tactical and generally within the exclusive province of the attorney.'" *Sheppard*, 2009 WL 743094, at *6 (citing *Bledsoe v. State*, 283 Kan. 81, 102-03, 150 P.3d 868 [2007]). Based on trial counsel's testimony about credibility concerns and other strategic considerations, the appellate court concluded that trial counsel's decision not to call Johnson as an alibi witness was reasonable. *Sheppard*, 2009 WL 743094, at *6.

As a result, Sheppard's claims about alibi witnesses and phone records fall under res judicata's prohibition against filing successive lawsuits. See *Bailey*, 315 Kan. at 799-800. First, the parties remain the same, and Sheppard repeats the same core legal argument—that trial counsel provided constitutionally IAC. His current claims that counsel failed to investigate Gaskin and Samuels simply add new names to claims already litigated and rejected.

These same theories formed the basis for Sheppard's direct appeal, where the appellate court specifically addressed and rejected his IAC claims in 2009. *Sheppard*, 2009 WL 743094, at *5-7. This appellate decision constitutes a final judgment on the merits. *Bailey*, 315 Kan. at 799-800. And so Sheppard's current assertions that trial counsel failed to investigate Gaskin or Samuels as alibi witnesses add names—but not new facts—to claims already considered.

Further, Sheppard's reliance on *Bogguess* proves unavailing. This reliance misses the critical distinction *Bogguess* established—that the exception applies only when IAC claims were not meaningfully litigated on direct appeal or involve new factual bases. See 306 Kan. at 582-83. When the direct appeal record contains comprehensive factual development—such as trial counsel's testimony during the evidentiary hearing explaining his strategic decisions and Sheppard's own testimony identifying potential witnesses to counsel—the IAC claims received adequate appellate consideration and res judicata

applies. See *Bogguess*, 306 Kan. at 582-83; *State v. Galaviz*, 296 Kan. 168, 192, 291 P.3d 62 (2012). The evidentiary completeness satisfies the exceptions threshold.

*Procedural Barriers and Claim Abandonment Reinforce Res Judicata*

The procedural history further reinforces res judicata's application. In essence, Sheppard's K.S.A. 60-1507 filing repackaged these settled theories. At the 2013 evidentiary hearing on Sheppard's K.S.A. 60-1507 motion, after the district court observed that these alibi witness and phone record claims had been adjudicated on direct appeal, and after the court noted prior adjudication, Sheppard's counsel abandoned additional pursuit of these issues.

In summary, Sheppard's claims satisfy all four elements required for res judicata: (1) The claims are identical, alleging failure to investigate specific alibi witnesses and phone records; (2) the parties remain unchanged; (3) the issues were actually raised and could have been fully developed in 2006, as evidenced by Sheppard's knowledge of the witnesses and trial counsel's strategic decisions regarding phone records documented in the record; and (4) there was a final judgment on the merits through the direct appeal. *Salary*, 309 Kan. at 482 (citing *Kingsley*, 299 Kan. at 901); *Martin*, 294 Kan. at 640-41.

Thus, the district court correctly applied res judicata to bar Sheppard's successive challenge.

(2)    *The district court did not err in finding no ineffective assistance of appellate counsel.*

*Standard of Review*

In reviewing a district court's decision on claims of ineffective assistance of counsel, appellate courts review the district court's factual findings using a substantial competent evidence standard. Appellate courts review the district court's legal conclusions based on those facts, applying a de novo standard of review. *State v. Evans*, 315 Kan. 211, 218, 506 P.3d 260 (2022).

*Preservation*

Sheppard's K.S.A. 60-1507 motion contends that his appellate counsel provided IAC for failing to seek a *Van Cleave* remand to develop his IAC claims against his trial counsel. But at the evidentiary hearing, Sheppard presented no evidence and pursued no argument related to appellate counsel's conduct or the merits of a *Van Cleave* remand. And the district court found no merit to Sheppard's allegation of appellate IAC, noting that there was "nothing presented regarding appellate counsel other than a mere allegation."

Abandonment at the evidentiary hearing impairs preservation, and relief is barred for claims presented in pleadings but not developed when facts are to be found. See *Woods v. State*, 52 Kan. App. 2d 958, 964-65, 379 P.3d 1134 (2016). The rule operates strictly, admitting exceptions only in rare cases of manifest injustice. See *Bogguess*, 306 Kan. at 580-81. The record here reflects clear abandonment and, absent any claim of extraordinary circumstances, the issue is foreclosed from appellate review.

12

*Res Judicata and Lack of Evidence Bar Claims*

The test for the effectiveness of appellate counsel mirrors that for trial counsel under *Strickland*. *State v. James*, 319 Kan. 178, 190, 553 P.3d 308 (2024). Sheppard, claiming ineffective assistance of appellate counsel, must demonstrate that counsel's performance, considering the totality of the circumstances, fell below an objective standard of reasonableness. 319 Kan. at 190. To determine whether the appellate counsel's performance was objectively reasonable, the appellate court reviews the challenged conduct on the facts of the particular case, viewed as of the time of the appellate counsel's conduct, while employing a strong presumption that the counsel's conduct was reasonable. 319 Kan. at 190.

Sheppard contends that his appellate counsel was ineffective for failing to seek a remand under *Van Cleave* to develop his IAC claims against trial counsel. *Van Cleave* authorizes appellate courts to order factual development on IAC claims when the record will not support resolution; such remands are discretionary and limited to cases presenting substantial, undeveloped issues, not as an avenue for speculative or unsupported allegations. *Galaviz*, 296 Kan. at 192; see *Van Cleave*, 239 Kan. at 120-21.

The State responds that appellate counsel cannot be deficient for failing to request a *Van Cleave* hearing because there was already an evidentiary hearing on the claims of IAC against trial counsel during the 2006 motion for new trial, which was reviewed on direct appeal.

As established in the previous sub-issues, Sheppard's underlying IAC claims about alibi witnesses and phone records is barred by res judicata. See *Bailey*, 315 Kan. at 799-800. These issues received comprehensive adjudication in 2006 and on direct appeal. *Sheppard*, 2009 WL 743094, at *5-7.

13

But Sheppard invokes *Bogguess*, arguing that denying review of his claims would undermine res judicata's equitable purpose because appellate counsel did not seek a *Van Cleave* remand on direct appeal. That reliance is misplaced.

Under *Bogguess*, an exception arises only where ineffective assistance claims either were not meaningfully litigated on direct appeal or rest on new factual grounds. See 306 Kan. at 582-83. The record here shows that Sheppard's claims were presented, supported by both his testimony and that of his trial counsel, and fully adjudicated on the merits. *Sheppard*, 2009 WL 743094, at *5-7. The completeness of this record distinguishes Sheppard's case from the type of exceptional circumstances contemplated by *Bogguess*. 306 Kan. at 580-81; *Sheppard*, 2009 WL 743094, at *5-7.

Van Cleave *Remand Was Neither Required Nor Appropriate*

Sheppard's contention that appellate counsel rendered ineffective assistance by failing to seek a *Van Cleave* remand falls short as Sheppard's argument lacks both factual and legal foundation. The State correctly notes that appellate counsel cannot be deficient for failing to request a *Van Cleave* hearing because there was already an evidentiary hearing on the IAC claims.

Even more, *Van Cleave* remands are not an entitlement but a limited procedural device invoked only when the existing record reveals substantial, undeveloped issues that could plausibly meet *Strickland*'s standards—such as investigative lapses or unresolved conflicts of interest that transcripts cannot resolve. See *Galaviz*, 296 Kan. at 192; *Van Cleave*, 239 Kan. at 120-21.

Here, the direct appeal record included trial counsel's testimony from the 2006 motion for new trial evidentiary hearing and the district court's findings regarding counsel's strategic choices on alibi investigation and impeachment tactics. On direct

14

appeal, this record provided the appellate court with sufficient factual foundation to resolve the IAC claims on their merits without the need for additional development. *Sheppard*, 2009 WL 743094, at *5-7.

Under the deferential standard established in *James*, the appellate counsel's decision to proceed with the existing evidentiary record rather than seek a *Van Cleave* remand falls within the wide range of reasonable professional assistance. *James*, 319 Kan. at 190. Still, a *Van Cleave* remand requires a specific showing of undeveloped, colorable merit—general suggestions of uncalled witnesses or missing records do not trigger it. See *Galaviz*, 296 Kan. at 192; *Van Cleave*, 239 Kan. at 120-21. Here, the comprehensive 2006 hearing had already provided the factual foundation necessary for appellate review, and seeking remand would have required preliminary evidence of merit beyond the conclusory assertions Sheppard presented. See *Van Cleave*, 239 Kan. at 120-21; *Sheppard*, 2009 WL 743094, at *5-7.

Even assuming the claim survives res judicata or abandonment—Sheppard's claim falters on both *Strickland* prongs, beginning with his failure to establish deficient performance. Appellate counsel raised the underlying IAC issues on direct appeal, and the appellate court had access to the district court's decision from the 2006 motion for new trial that addressed trial counsel's strategic decisions regarding alibi investigation and impeachment choices. The appellate court evaluated these claims on the merits and found trial counsel's decisions were reasonable strategic choices. *Sheppard*, 2009 WL 743094, at *5-7.

Even more, as mentioned above, a *Van Cleave* remand requires a specific showing of undeveloped, colorable merit. General suggestions of uncalled witnesses or missing records do not trigger it. See *Galaviz*, 296 Kan. at 192; *Van Cleave*, 239 Kan. at 120-21. On this record, trial counsel's choice to proceed with the existing record falls within the bounds of reasonable professional assistance. *James*, 319 Kan. at 190.

15

Likewise, Sheppard does not establish the second prong to show prejudice. Prejudice requires a showing that the appellant counsel's errors created a reasonable probability of a different outcome—a probability sufficient to undermine confidence in the result. 319 Kan. at 184-85. Here, the direct appeal record included comprehensive testimony from the 2006 motion for new trial hearing, where trial counsel detailed strategic choices regarding alibi investigation and impeachment tactics. This record allowed the appellate court to resolve the ineffective assistance claims on their merits, without the need for a *Van Cleave* remand. *Sheppard*, 2009 WL 743094, at *5-7.

The abandonment of the appellate IAC claims at the 1507 evidentiary hearing further undermines any assertion of prejudice, as even that collateral forum—designed for full factual development—yielded no new evidence or arguments to support the need for earlier remand. An adequate record existed for appellate review, and no subsequent proceedings revealed evidence that would have warranted remand. Appellate counsel need not pursue every procedural option when the available evidence supports resolution. See *Galaviz*, 296 Kan. at 192.

Thus, the district court correctly rejected Sheppard's claim of appellate IAC. The underlying claims are barred by res judicata. Sheppard presented no evidence supporting his appellate counsel theory, and a *Van Cleave* remand was not required, given the comprehensive evidentiary record from the 2006 proceedings.

Thus, the district court correctly found that there was no ineffective assistance of appellate counsel.

Affirmed.